No. 11-1286

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS,<br><br>          Plaintiff-Appellant,<br><br>v.<br><br>ANITA ALVAREZ, Cook County State's Attorney, in her official capacity,<br><br>          Defendant-Appellee. | Appeal from the<br>United States District Court for<br>the Northern District Of Illinois,<br>Eastern Division<br><br>No. 10 C 5235<br><br>The Honorable Suzanne B. Conlon,<br>Judge Presiding |

REPLY BRIEF OF PLAINTIFF-APPELLANT
THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS

———————————

Harvey Grossman
Adam Schwartz
Karen Sheley
ROGER BALDWIN FOUNDATION
 OF ACLU, INC.
180 N. Michigan Avenue, Suite 2300
Chicago, Illinois 60601
(312) 201-9740

Richard J. O'Brien
    *Counsel of Record*
Linda R. Friedlieb
Robert D. Leighton
Matthew D. Taksin
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Dated: August 26, 2011

# TABLE OF CONTENTS

                                                                        **Page**

INTRODUCTION ................................................................................................ 1

I.    The ACLU Program Will Not Record Private Conversations Or
      Intercept Any Conversations. ............................................................... 2

II.   The ACLU Program Enjoys First Amendment Protection. ............................ 3

      A.   First Amendment Principles Support Protection For The Right
           To Audio Record Matters Of Public Concern. ......................... 4

      B.   Audio Recording Is Qualitatively Different — In a Manner That
           Requires Its Protection. .......................................................... 8

      C.   Alvarez's "Willing Speaker" Arguments Are Erroneous......................... 9

      D.   Alvarez's Press And Petitioning Assertions Are Erroneous. ............... 11

III.  The Act As Applied Triggers Strict Scrutiny. ................................... 13

IV.   The Act As Applied Fails Mid-Level Scrutiny. ............................... 15

      A.   Alvarez's Asserted Privacy Interests Are Contrary To Law. .............. 16

      B.   Alvarez's Asserted Speech Interest Is Incorrect. ................................ 18

      C.   Alvarez's Asserted Law Enforcement Interests Are
           Unsupported. .......................................................................... 18

      D.   Alvarez's Asserted Alternative Channels Are Inadequate. ................... 19

V.    Plaintiffs Have Standing. ....................................................................... 20

      A.   The Act Bans The Protected ACLU Program. ................................... 20

      B.   There Is A Credible Threat Of Prosecution........................................ 21

      C.   Alvarez's Proposed Barriers Are Contrary To Law. ............................ 22

VI.   Abstention Is Not Warranted. .............................................................. 25

VII.  The ACLU Is Entitled To A Preliminary Injunction. ...................................... 26

CONCLUSION.................................................................................................. 27

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*520 S. Michigan Ave. Assocs. v. Devine,*
    433 F.3d 961 (7th Cir. 2006) ................................................................... 23, 25, 26

*ACLU v. Johnson,*
    4 F. Supp. 2d 1024 (D.N.M. 1998) .......................................................... 22

*Adams v. ARDC,*
    801 F.2d 968 (7th Cir. 1986) ................................................................... 26

*Adkins v. Guam Police Dept.,*
    2010 WL 3385176 .................................................................................... 6

*Allen v. Allen,*
    48 F.3d 259 (7th Cir. 1995) ..................................................................... 26

*Babbitt v. UFW,*
    442 U.S. 289 (1979) ................................................................................. 20, 22

*Bartnicki v. Vopper,*
    532 U.S. 514 (2001) .........................................................................*passim*

*Bauer v. Shepard,*
    620 F.3d 704 (7th Cir. 2010) ................................................................... 21

*Bd. of Educ. v. Pico,*
    457 U.S. 853 (1982) ................................................................................. 1, 9, 10

*Bianco v. ABC,*
    470 F. Supp. 182 (N.D. Ill. 1979) ........................................................... 18

*Blackston v. State of Alabama,*
    30 F.3d 117 (11th Cir. 1994) ................................................................... 12

*Boehner v. McDermott,*
    484 F.3d 573 (D.C. Cir. 2007) ................................................................. 7

*Bond v. Utreras,*
    585 F.3d 1061 (7th Cir. 2009) ................................................................. 10

*Boyle v. Landry,*
    401 U.S. 77 (1971) ................................................................................... 23

*Brandt v. Vill. of Winnetka*,
    612 F.3d 647 (7th Cir. 2010) ................................................................ 24

*Branzburg v. Hayes*,
    408 U.S. 665 (1972) ........................................................................ 12

*Charles v. Carey*,
    627 F.2d 772 (7th Cir. 1980) .............................................................. 26

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .......................................................................... 23

*City of Ontario v. Quon*,
    130 S. Ct. 2619 (2010) ..................................................................... 18

*Colten v. Kentucky*,
    407 U.S. 104, 109-10 (1972) .............................................................. 19

*Commodity Trend Serv., Inc. v. CFTC*,
    149 F.3d 679 (7th Cir. 1998) .......................................................... 22, 23

*Doe v. Bolton*,
    410 U.S. 179 (1973) .................................................................. 21, 23, 25

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ........................................................................ 25

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ........................................................................ 16

*Fordyce v. City of Seattle*,
    55 F.3d 436 (9th Cir. 1995) ............................................................ 5, 6

*Fordyce v. City of Seattle*,
    840 F. Supp. 784 (W.D. Wash. 1993) .................................................. 6

*Forty One News, Inc. v. Lake County*,
    491 F.3d 662 (7th Cir. 2007) ............................................................ 25

*Frisby v. Schultz*,
    487 U.S. 474 (1988) ........................................................................ 17

*Goldhamer v. Nagode*,
    621 F.3d 581 (7th Cir. 2010) ............................................................ 21

*Grosjean v. Am. Press Co.*,
    297 U.S. 233 (1936) ........................................................................ 11

*Holder v. Humanitarian Law Project,*
   130 S. Ct. 2705 (2010) ................................................................. 22, 23

*Hoover v. Wagner,*
   47 F.3d 845 (7th Cir. 1995) ............................................................. 26

*Horina v. Granite City,*
   538 F.3d 624 (7th Cir. 2008) ........................................................... 20

*Houchins v. KQED,*
   438 U.S. 1 (1978) ...................................................................... 11, 12

*Iacobucci v. Boulter,*
   193 F.3d 14 (1st Cir. 1999) ............................................................... 12

*Jean v. Massachusetts State Police,*
   492 F.3d 24 (1st Cir. 2007) ............................................................. 7, 8

*Jones v. Gaydula,*
   1989 WL 156343 (E.D. Pa. Dec. 22, 1989) ......................................... 6

*Katz v. United States,*
   389 U.S. 347 (1967) (Harlan, J., concurring) ................................. 17, 18

*Kelly v. Borough of Carlisle,*
   622 F.3d 248 (3d Cir. 2010) ............................................................. 6

*Kelly v. Franco,*
   72 Ill. App. 3d 642 (1st Dist. 1979) .................................................. 18

*Kucharek v. Hanaway,*
   902 F.2d 513 (7th Cir. 1990) ........................................................... 23

*LAPD v. United Reporting Co.,*
   528 U.S. 32 (1999) ......................................................................... 11

*Larsen v. Fort Wayne Police Dept.,*
   2010 WL 2400374 (N.D. Ind. June 11, 2010) ..................................... 5

*Madsen v. Women's Health Center,*
   512 U.S. 753 (1994) ....................................................................... 15

*Majors v. Abell,*
   317 F.3d 719 (7th Cir. 2003) ....................................................... 23, 25

*McCormick v. City of Lawrence,*
   130 Fed. Appx. 987 (10th Cir. 2005) ................................................ 6

*New Hampshire Right to Life PAC v. Gardner,*
   99 F.3d 8 (1st Cir. 1996) .......................................................... 21, 22, 23

*New York Times v. Sullivan,*
   376 U.S. 254 (1964) ..................................................................... 12

*NRA v. City of Evanston,*
   2009 WL 1139130 (N.D. Ill. Apr. 27, 2009) ................................... 22

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ..................................................................... 23

*Pell v. Procunier,*
   417 U.S. 817 (1974) ................................................................. 11, 12

*People v. Beardsley,*
   115 Ill. 2d 47 (1986) ............................................................ 1, 3, 8, 16

*People v. Smith,*
   72 Ill. App. 3d 956, 964 (1st Dist. 1979) ....................................... 18

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
   460 U.S. 37 (1983) ....................................................................... 15

*Planned Parenthood v. City of Cincinnati,*
   822 F.2d 1390 (6th Cir. 1987) ...................................................... 23

*Planned Parenthood v. Doyle,*
   162 F.3d 463 (7th Cir. 1998) ........................................................ 26

*Pochoda v. Arpaio,*
   2009 WL 1407543 (D. Ariz. May 20, 2009) ...................................... 9

*Potts v. City of Lafayette,*
   121 F.3d 1106 (7th Cir. 1997) ................................................ 3, 4, 5

*Rice v. Kempker,*
   374 F.3d 675 (8th Cir. 2004) ........................................................ 13

*Richmond Newspapers, Inc. v. Virginia,*
   448 U.S. 555 (1980) .................................................................. 9, 11

*Smith v. City of Cumming,*
   212 F.3d 1332 (11th Cir. 2000) ...................................................... 5

*Stern v. Great Western Bank,*
   959 F. Supp. 478 (N.D. Ill. 1997) ................................................. 18

*Szymecki v. Houck,*
    353 Fed. Appx. 852 (4th Cir. 2009) ........................................................ 6

*Tarus v. Borough of Pine Hill,*
    916 A.2d 1036 (N.J. 2007) .................................................................. 13

*Thompson v. City of Clio,*
    765 F. Supp. 1066 (M.D. Ala. 1991) ...................................................... 12

*Toledo Newspaper Co. v. United States,*
    247 U.S. 402 (1918) .......................................................................... 12

*Turner Broad. Sys. v. F.C.C.,*
    512 U.S. 622 (1994) .......................................................................... 17

*United States v. Cuevas-Perez,*
    640 F.3d 272 (7th Cir. 2011) ............................................................... 17

*United States v. Kerley,*
    753 F.2d 617 (7th Cir. 1985) ............................................................... 12

*United States v. United States District Court,*
    407 U.S. 297 (1972) .......................................................................... 18

*United States v. Wells,*
    2011 WL 2259748 (N.D. Okla. May 12, 2011) ......................................... 16

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) ........................................................................... 9

*Virginia v. Am. Booksellers Ass'n,*
    484 U.S. 383 (1988) ...................................................................... 22, 23

*Whiteland Woods LP v. Township of West Whiteland,*
    193 F.3d 177 (3rd Cir. 1999) ............................................................... 13

*Younger v. Harris,*
    401 U.S. 37 (1971) ....................................................................... 25, 26

*Zemel v. Rusk,*
    381 U.S. 1 (1965) ............................................................................ 12

## STATUTES

720 ILCS 5/14-1 ....................................................... 3, 14, 15, 21

720 ILCS 5/14-2 ............................................................ 14, 21

720 ILCS 5/14-3 ........................................................................ 14, 24, 25

720 ILCS 5/2-15 .............................................................................. 21

720 ILCS 5/31-1 .............................................................................. 19

720 ILCS 5/5-1 ................................................................................ 21

720 ILCS 5/5-2 ................................................................................ 21

720 ILCS 5/5-4 ................................................................................ 21

18 Pa. Stats. § 5702 ...................................................................... 15

18 U.S.C. § 2510(2) ....................................................................... 15

## OTHER AUTHORITIES

Jesse Harlan Alderman, *Police Privacy in the Iphone Era?*, 9 First Amend. L.
    Rev. 487 (Spring 2011) ............................................................. 8

## INTRODUCTION

The central issue before the Court is whether the First Amendment protects open audio recording of on-duty police speaking audibly in public places while discharging their public duties.  Alvarez concedes the ACLU has a First Amendment right to listen to, take notes of, and publish the same police conversations it seeks to audio record, and the right to petition based on those conversations.  Alv. Br. 15-16.[1]  But Alvarez's proposed line between listening, note-taking, and publishing, on the one hand, and audio recording, on the other, is not justified by any of her arguments.

First, in a testament to the weakness of Alvarez's position, she regularly mischaracterizes the ACLU Program.  She states that the recording would be secret (Alv. Br. 14, 23, 27, 40); that the ACLU would "intercept" communications (*id.* 12, 18); and that the ACLU seeks to conduct "private surveillance" (*id.* 17).  None of this is true.  Further, contrary to Alvarez's assertions (*id.* 18, 27), the Illinois Supreme Court has held that the type of conversations the ACLU seeks to record is not private.  *See People v. Beardsley*, 115 Ill. 2d 47 (1986).

Second, Alvarez argues the ACLU's First Amendment right to receive information via audio recording requires a willing speaker and that no speaker is willing without his express consent to audio recording.  But that argument is belied by cases like *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982), which hold that the right

---

[1] Herein, "Compl." means the proposed Amended Complaint (D. 36-1), "D" means the District Court's docket, "ACLU Br." means the ACLU's opening brief, and "Alv. Br." means Alvarez's response brief.

to receive ideas is a "necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom."  In any event, police are willing speakers in the scenarios of concern here.  Only if they remain silent are they not willing speakers, in which case there would be nothing to record.

Third, Alvarez argues that even though one is free to listen, take notes of, and publish police conversations that occur in public, audio recording should receive no First Amendment protection because it is "qualitatively different."  But any qualitative difference about audio recording favors its First Amendment protection since it enhances the reliability and accuracy of the information received and any subsequent First Amendment-protected use of it.

Fourth, Alvarez argues that the Act is a reasonable time, place, and manner restriction.  But the challenged application of the Act is subject to strict scrutiny because it is content- and speaker-based.  And under any standard, Alvarez's asserted interests are not advanced by the challenged application of the Act.

Alvarez's other arguments — standing and abstention — are legally incorrect.  The ACLU has been and continues to be deterred from exercising its First Amendment rights.  This undeniable "chill" alone makes the abridgement of the ACLU's First Amendment freedoms complete.

## I.   The ACLU Program Will Not Record Private Conversations Or Intercept Any Conversations.

Alvarez argues that "in ACLU's view, the First Amendment prohibits states from outlawing private surveillance."  Alv. Br. 17.  But ACLU staff would audio record police without their consent only when:  (1) the officers are performing their

public duties; (2) the officers are in public places; (3) the officers are speaking at a volume audible to the unassisted human ear; and (4) the manner of recording is otherwise lawful. Compl. ¶ 1. Audio recording would be open, not secret. D. 40, p. 9, n.5. It would focus on public forums during expressive activities. ACLU Br. 2, 9.

Similarly, Alvarez argues: "As stated in *Bartnicki*, ACLU is not protected by the First Amendment where it illegally intercepts police-civilian encounters." Alv. Br. 18. But the ACLU would not "intercept" phone communications, as occurred in *Bartnicki v. Vopper*, 532 U.S. 514, 517 (2001). *See generally* 720 ILCS 5/14-1(a), (d), (e) (distinguishing "record[ing]" an "oral conversation," from "intercept[ing]" an "electronic communication"). *Bartnicki* recognizes the legitimate interest in protecting *private* communications. 532 U.S. at 532-33. The ACLU does not seek to record private conversations.

This theme runs throughout Alvarez's brief — *i.e.*, that the conversations the ACLU seeks to record are private. But they clearly are not. *Beardsley*, 115 Ill. 2d 47; ACLU Br., Part IV.B. Alvarez admits as much in her discussion of *Potts v. City of Lafayette*, 121 F.3d 1106, 1109 (7th Cir. 1997): "even at a public gathering, *where the speaker undeniably has no expectation of privacy* regarding the dissemination of his utterances, there is no right to record such an event." Alv. Br. 23 (emphasis added).

## II.    The ACLU Program Enjoys First Amendment Protection.

The First Amendment protects (a) speech in public forums and about government officials and public matters, and (b) gathering and recording information, including audio recording on-duty police. ACLU Br. 14-22. Alvarez

argues that "no other circuit has unequivocally acknowledged a right to audio-record a police officer."  Alv. Br. 24, 27.  As discussed below, Alvarez is incorrect.  Further, all of the reasons why the First Amendment protects civilians' photography and silent video of on-duty police also support First Amendment protection of audio recording.  Civilian audio recording of on-duty police advances effective expression and petitioning about government.

### A.    First Amendment Principles Support Protection For The Right To Audio Record Matters Of Public Concern.

The right to record is part of the well-recognized right to gather core protected speech about government officials, particularly in public forums, to record that information in a variety of manners, and then to disseminate it and use it to petition the government.  *See* ACLU Br., Part I.

Alvarez relies on a single out-of-context quote from *Potts*:  "there is nothing in the Constitution which guarantees the right to record a public event."  121 F.3d at 1111 (Alv. Br. 23).  Indeed, with respect to all First Amendment rights, there is no "guarantee."  They may be subject to, for example, reasonable time, place and manner restrictions.  In fact, after noting that there are no First Amendment "guarantees," the *Potts* Court analyzed the limit there — prohibiting bringing objects, including audio recorders, into a KKK rally — to determine if it was a reasonable time, place and manner restriction on First Amendment activity.  In light of a past history of violence at KKK rallies using tape recorders as weapons, this Court concluded it was.  *Id.*  No such public safety concern exists here:  the

ACLU seeks to use recorders as recorders, not as weapons. Finally, the policy in *Potts* did not extend to the media, while the Act here does.[2]

Alvarez admits that *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000), "did recognize a First Amendment right to photograph or videotape police conduct subject to reasonable time, place, and manner restrictions." Alv. Br. 25. Alvarez argues that *Smith* misapplied *Fordyce v. City of Seattle*, 55 F.3d 436, 438-39 (9th Cir. 1995). Alvarez is wrong about both *Smith* and *Fordyce*.

Citing seven cases including *Fordyce*, *Smith* stated the following fundamental principle: "The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith*, 212 F.3d at 1333. This is a first principle of First Amendment jurisprudence. The only point *Smith* made about *Fordyce* is that it recognized a "First Amendment right to film matters of public interest." *Id.*, quoting *Fordyce*, 55 F.3d at 439.

Alvarez asserts *Fordyce* did not "clearly reach[]" whether such conduct was a "clearly established First Amendment right." Alv. Br. 26. But there is no need in this pre-enforcement injunctive challenge for the right to be "clearly established." Moreover, *Fordyce* involved two different episodes during a demonstration: first, an officer attacked a civilian for recording police; later, another officer arrested that

---

[2] In *Larsen v. Fort Wayne Police Dept.*, 2010 WL 2400374 (N.D. Ind. June 11, 2010) (Alv. Br. 23), a father had no First Amendment right to audio-video record his daughter's choir competition at her public school, which had a proprietary interest in making and selling its own recording of the event. But here, there is no assurance police will make or share recordings of their conversations with civilians. Further, police have no proprietary interest in exclusive recording.

civilian for recording juvenile bystanders over their guardian's objection. The court granted qualified immunity only as to the later episode that did not involve recording police. As to the earlier episode that did involve recording police, the court found a "genuine issue of material fact does exist regarding whether Fordyce was assaulted and battered by a Seattle police officer in an attempt to prevent or dissuade him from exercising his First Amendment right to film matters of public interest." 55 F.3d at 439. The court reversed summary judgment for the officer as to the "First Amendment claim." *Id. Fordyce* squarely protected audio recording of police, as well as video recording. *See id.* (the civilian was "simultaneously audio-recording"). *See also Fordyce v. City of Seattle*, 840 F. Supp. 784, 787-88 (W.D. Wash. 1993) (the videotape had a "soundtrack").

Likewise, Alvarez relies heavily on cases finding that no First Amendment right has been "clearly established." Alv. Br. 24-25, 27, citing *Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010); *Szymecki v. Houck*, 353 Fed. Appx. 852 (4th Cir. 2009); *McCormick v. City of Lawrence*, 130 Fed. Appx. 987, 988 (10th Cir. 2005) (police destruction of audio recordings); *Adkins v. Guam Police Dept.*, 2010 WL 3385176, **10-12 (D. Guam Aug. 24, 2010) (photography of car crash). Those courts explicitly did not reach whether a First Amendment right exists — the issue here. Alvarez also relies upon *Jones v. Gaydula*, 1989 WL 156343, *2 (E.D. Pa. Dec. 22, 1989) (Alv. Br. 21), an unpublished district court opinion holding — without analysis or citation — that the First Amendment does not protect audio recording police. That opinion is incorrect.

Finally, Alvarez relies on cases where a person lawfully obtained and asserted a First Amendment right to publish a conversation of public significance unlawfully recorded by another person.  Alv. Br. 18, discussing *Bartnicki*, 532 U.S. at 517-18 (the federal and Pennsylvania eavesdropping laws violated the First Amendment as applied to such publication); *Boehner v. McDermott*, 484 F.3d 573 (D.C. Cir. 2007) (the same federal law did not violate the First Amendment as applied to a Congressman who obtained the recording as an Ethics Committee member with a duty not to publish confidential information).  But the fact that the First Amendment did not protect the initial secret electronic interception of private phone calls in *Bartnicki* and *Boehner* has no relevance to the issue here — *i.e.*, whether the First Amendment protects open audio recording of the non-private oral conversations of on-duty police in public places that can be overheard by passersby. The ACLU does not maintain that the First Amendment protects civilian audio recording of *every* communication by a public official on a matter of public concern, without regard to reasonable expectations of privacy.  The ACLU Program concerns non-private conversations, ACLU Br. 33-39, while *Bartnicki* and *Boehner* concerned private telephone calls.  532 U.S. at 518, 532-33; 484 F.3d at 575, 577.

Even further afield is *Jean v. Massachusetts State Police*, 492 F.3d 24, 25 (1st Cir. 2007), which held that Massachusetts' eavesdropping law violated the First Amendment as applied to publishing a homeowner's audio recording of police searching his home.  *Cf.* Alv. Br. 18.  *Jean* "assume[d]" but did not decide that the initial recording violated the state eavesdropping act, 492 F.3d at 25, and did not

address whether the First Amendment protected such recording.  Also, *Jean* held

the police had no reasonable expectation of privacy.  *Id.* at 29-30.

> **B.    Audio Recording Is Qualitatively Different — In a Manner That Requires Its Protection.**

Alvarez states that "video-recording and photographing are drastically

different forms of media from that of audio-recording" because the latter can

"memorialize those spoken words regardless of this expectation of privacy."  Alv. Br.

27.  But again, there is no expectation of privacy as to the conversations the ACLU

would record.  *See Beardsley*, 115 Ill. 2d 47; ACLU Br., Part IV.B.  Alvarez argues

audio-recording "can immortalize statements, including misstatements."  Alv. Br.

27.  In fact, the more accurate the form of preservation of publicly available

information on matters of public concern, the more weighty the public interest in

using that form.  This is why the Act allows uniformed police to tape their

conversations with civilians — to avoid disputes about what "actually happened."

D. 18, Exh. B. (leg. trans.), pp. 83-84.  *See also* ACLU Br. 5-6.

Our society is undergoing a technological revolution which enables ordinary

people and organizations to rapidly, cheaply, and easily gather and then

disseminate recordings of critical information of public concern.  ACLU Br. 11-12,

22-24.  Thus, the First Amendment treats gathering and recording information, and

publishing and petitioning with it, as links in the same protected chain.  *Id.* 27-28.

*See generally* Jesse Harlan Alderman, *Police Privacy in the Iphone Era?*, 9 First

Amend. L. Rev. 487 (Spring 2011).

C.    Alvarez's "Willing Speaker" Arguments Are Erroneous.

Alvarez asserts there is no First Amendment right to audio record on-duty police, because the First Amendment right to receive information depends upon a willing speaker and on-duty police speaking audibly in public places are not willing speakers absent express consent to audio recording.  Alv. Br. 21.  Alvarez further argues there can be no challenge to a burden on a listener's rights unless the statute also burdens the speaker's rights.  *Id.* 22.  Neither argument has merit.

Alvarez argues *Pico* shows a willing speaker is necessary for First Amendment protection for listeners:  "A right to receive information 'is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution' because 'the right to receive ideas follows ineluctably from the *sender's* First Amendment right to send them."  *Id.* 20, *quoting* 457 U.S. at 857 (emphasis in *Pico*).  Indeed, where the speaker is precluded from speaking, the listener is automatically precluded from listening.  This was the case, for example, in another of Alvarez's cases, *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756-57 (1976), where the would-be advertising recipients challenged limits on advertising.

However, nothing in *Pico* or *Virginia State Board of Pharmacy* states that a limitation on speakers — as opposed to listeners — was a precondition of First Amendment protection for listeners.  Courts have enforced listener rights where there was no burden on speakers.  *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Pochoda v. Arpaio*, 2009 WL 1407543 (D. Ariz. May 20, 2009).  Alvarez's other cases (Alv. Br. 19-22) address situations where listeners can or

9

cannot challenge burdens on speakers.  They do not suggest that speaker burdens are necessary for listeners to challenge direct burdens on listeners — the situation here.

Indeed, *Pico* gave two reasons for First Amendment protection for the right to receive information.  The first is discussed above.  The Court also reasoned:  "More importantly, the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom."  457 U.S. at 867 (emphasis in original).  Thus, the ACLU's right to accurately receive the words of on-duty police is "a necessary predicate" to the ACLU's subsequent speech and petitioning about policing.[3]

On-duty police speaking audibly in public are willing speakers.  Passersby may listen, take notes, publish the conversations, and recount them in official proceedings — even if the police object.  *Accord* Alv. Br. 41.  Speakers have a choice — to speak or not to speak.  Having spoken, speakers cannot preclude those nearby from listening or taking notes or repeating the conversation from memory later.  Likewise, having spoken and therefore being willing speakers, police cannot preclude listeners from audio recording.

---

[3] Not to the contrary is *Bond v. Utreras*, 585 F.3d 1061, 1077 (7th Cir. 2009), which held a non-party lacked standing to seek records exchanged during civil discovery under a "stipulated protective order," but never filed in court.  The *Bond* litigants essentially had a private conversation.  But the ACLU Program involves non-private conversations.  *See* ACLU Br. 46.

Finally, Alvarez does not explain why police should have a "willing speaker" veto against civilians, when civilians do not have it against uniformed police who may freely record under the Act.

**D.     Alvarez's Press And Petitioning Assertions Are Erroneous.**

Alvarez argues the ACLU seeks special rights and an unlimited right to gather information.  Neither argument is true.

Alvarez assumes the ACLU is part of the press (Alv. Br. 29), but the ACLU's status is irrelevant.  The Press Clause protects an activity — news gathering and publishing — not a status.  *See, e.g., Grosjean v. Am. Press Co.*, 297 U.S. 233, 249-50 (1936); *Richmond Newspapers*, 448 U.S. at 576 (plurality).  So Alvarez is correct that the press has no special First Amendment status.  Where she errs is arguing that all civilians do not have an equal First Amendment right to gather the news or information about matters of public concern, including by audio recording on-duty police in public places.

Similarly, Alvarez asserts the ACLU seeks to impose on government an "affirmative duty to make sources of information available."[4]  But the "source" of the information here — on-duty police audibly speaking in public — is already "available."  Only the manner of recording is at issue.

For Alvarez's argument that the ACLU seeks an "unlimited" right of access, she relies on cases prohibiting certain courtroom recordings.  But in courtrooms,

---

[4] Alv. Br. 30, citing *Pell v. Procunier*, 417 U.S. 817, 834-35 (1974); *Houchins v. KQED*, 438 U.S. 1, 10-11 (1978); *LAPD v. United Reporting Co.*, 528 U.S. 32, 40 (1999).

government has special interests: recording might degrade courtroom "decorum," and "impair the truth-finding function." *United States v. Kerley*, 753 F.2d 617, 621 (7th Cir. 1985). Moreover, the court reporter will create an objective record readily available to everyone (unlike here). Other lawful press limits cited by Alvarez — addressing physical access to sensitive areas,[5] testimony,[6] defamation,[7] and contempt[8] — are also not helpful.

The cases involving open government meetings favor a First Amendment right to record. In *Thompson v. City of Clio*, 765 F. Supp. 1066, 1070 (M.D. Ala. 1991), the court protected audio recording of city council meetings because recording helps citizens "present such information." While mid-level "time, place, or manner" scrutiny ordinarily applies, *id.*, speaker-based discrimination triggered stricter review (*id.* at 1071-72) – as here. *Cf.* Alv. Br. 26 n.11. Likewise, in *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994), the court protected audio recording because it helped civilians "present information about" the court's advisory committee. *Cf.* Alv. Br. 31. *See also Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999) (Fourth Amendment violated by arrest for audio recording a government

---

[5] Alv. Br. 29-30, 33, citing *Zemel v. Rusk*, 381 U.S. 1 (1965); *Pell*, 417 U.S. 817; *Houchins*, 438 U.S. 1.

[6] Alv. Br. 33, citing *Branzburg v. Hayes*, 408 U.S. 665, 684-85 (1972).

[7] Alv. Br. 32-33 & n.15, citing *New York Times v. Sullivan*, 376 U.S. 254 (1964).

[8] Alv. Br. 32, 34, citing *Toledo Newspaper Co. v. United States*, 247 U.S. 402 (1918).

meeting); *Tarus v. Borough of Pine Hill*, 916 A.2d 1036, 1039 (N.J. 2007) (state common law violated by same).

Alvarez's cases are inapposite. Alv. Br. 31. In *Whiteland Woods LP v. Township of West Whiteland*, 193 F.3d 177, 183 (3rd Cir. 1999), the court upheld a ban on videotaping a planning commission's meetings, because spectators could instead use "audio recording devices." In *Rice v. Kempker*, 374 F.3d 675, 678-679 (8th Cir. 2004), the court upheld a ban on recording an execution inside a prison — a venue not subject to the ACLU Program. In *dicta*, *Rice* rejected a First Amendment right to record open government meetings, based on inapposite cases regarding courtroom recording. *Id.* at 678.

Alvarez's discussion of petitioning also ignores the core First Amendment principle. Alv. Br. 34-35. As stated previously, the ACLU does not "assume[] that its members' encounters with the police will result in redressable causes of action." *Id.* at 34. The ACLU assumes that by monitoring police in public, it will obtain information that it may use in any manner of petitioning — from lobbying in specific cases to lobbying for general changes in laws.

## III.   The Act As Applied Triggers Strict Scrutiny.

The Act comprises speaker-based discrimination because it allows uniformed on-duty police to record their conversations with civilians while forbidding civilians from recording those same conversations. This speaker-based discrimination triggers strict scrutiny, because it can determine content:  some police will record conversations that make them look good, and not record conversations that make them look bad. ACLU Br. 5-6, 24-25. Strict scrutiny is separately required here

because the Act requires prosecutors to consider the content of the recording —
whether it includes the voices of police — to decide whether to seek a one-to-three
year penalty or a four-to-fifteen year penalty.  *Id.* 5, 25-27.

Alvarez argues, however, that this double-standard does not constitute
discrimination:  "both civilians' and police officers' content will be recorded, even if
the recording is done at the hands of the police officers only."  Alv. Br. 42.  In fact,
the Act's application is content-based because it does not regulate when the
uniformed officers may start and stop recording, 720 ILCS 5/14-3(h), so officers may
choose not to record conversations that cast them in a negative light.  The Act
allows police to destroy most recordings after 90 days.  *Id.* at -3(h-5).  The Act does
not require police to share their recordings with civilians.

Alvarez also argues there is no discrimination because "officers are not
allowed to audio-record citizens with impunity."  Alv. Br. 42.  This point does not
address the Act's speaker-based discrimination.  Moreover, while the Act generally
requires police to have all-party consent or a warrant to record conversations, *see*
ACLU Br. 5-6, discussing 720 ILCS 5/14-1(b) & -2(a)(1)(B), for current purposes,
police can record with impunity:  the Act exempts uniformed officers' audio
recording civilians during "traffic stops," "pedestrian stops," and a host of other
civilian encounters.  720 ILCS 5/14-3(h).

Nor does *Bartnicki* support Alvarez.  While *Bartnicki* held that the federal
and Pennsylvania prohibitions on disclosing unlawfully recorded conversations are
"content-neutral law[s] of general applicability," 532 U.S. at 526 (Alv. Br. 36-37),

the Act here is doubly distinct: its differential treatment of police and civilians comprises speaker-based discrimination; and it restricts recording of non-private oral conversations. *Compare* 720 ILCS 5/14-1(d), *with* 18 U.S.C. § 2510(2), *and* 18 Pa. Stats. § 5702. Moreover, *Bartnicki* also held that "the naked prohibition against disclosures is fairly characterized as a regulation of pure speech," 532 U.S. at 526 — a conclusion that ordinarily triggers strict scrutiny. *See* ACLU Br. 27-28.

In *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983), the Court upheld differential access to non-forums, if reasonable and viewpoint-neutral. But the ACLU Program will occur in traditional public forums. In *Madsen v. Women's Health Center*, 512 U.S. 753, 763 (1994), the Court upheld an injunction against a group based on its past unprotected conduct, despite the incidental burden on its message. But the Act's different treatment of police and civilians is not based on any differences in past conduct. *Cf.* Alv. Br. 37.

Finally, Alvarez posits no argument for how the Act could survive strict scrutiny. It could not. ACLU Br. 28-29.

## IV. The Act As Applied Fails Mid-Level Scrutiny.

Alvarez argues the Act as applied to the ACLU Program is narrowly tailored to three government interests: privacy (Alv. Br. 20, 27, 38-40); free speech (*id.* 4, 16-17, 40); and law enforcement (*id.* 25, 34, 41). Alvarez also asserts the Act leaves adequate alternative channels of communication. *Id.* 30, 41. She is mistaken on all points.

### A.   Alvarez's Asserted Privacy Interests Are Contrary To Law.

It is settled Illinois law that the conversations the ACLU seeks to record are not subject to any objectively reasonable expectation of privacy. *Beardsley*, 115 Ill. 2d 47. Other courts uniformly agree. *See, e.g., United States v. Wells*, 2011 WL 2259748, *6 & n.4 (N.D. Okla. May 12, 2011) (on-duty police lacked reasonable expectation of privacy, so audio recording of them by other police did not violate the Fourth Amendment: "Police officers are public officials and are thus expected to carry out their duties openly and subject to the reasonable scrutiny of the citizens they serve."). *See generally* ACLU Br. 34-38. Alvarez's cited cases (Alv. Br. 39 n.20) fall within this consensus. So the Act's application to the ACLU Program is not "narrowly tailored" to a privacy interest, as there is no such interest.

Ignoring this universally adopted legal principle, Alvarez advocates an unprecedented definition of privacy. Specifically, Alvarez argues that *all* conversations are presumptively private unless each participant evinces a subjective belief that the conversation is not private via consent to audio recording. Alv. Br. 38. Alvarez dismisses the well-settled objective reasonableness requirement, asserting that her newly minted, purely subjective rule "alleviat[es] any speculation as to the speaker's intention of whether he or she intended such communication to remain private by engaging in a *post hoc* analysis within the contours of the varying courts' interpretations of 'reasonable' expectation of privacy." *Id.* But this is not the law, nor should it be.

Speech regulations must be "precis[e]," not "prophylactic." *Edenfield v. Fane*, 507 U.S. 761, 777 (1993). The Act as applied to the ACLU Program does not

16

advance actual, objectively reasonable privacy "in a direct and material way,"

*Turner Broad. Sys. v. F.C.C.*, 512 U.S. 622, 664 (1994), and it is not limited to "the

exact source of the 'evil,'" *Frisby v. Schultz*, 487 U.S. 474, 485 (1988), so it is not

narrowly tailored.

Moreover, Alvarez's approach is contrary to settled law:

> [T]here is a twofold requirement, first that a person have
> exhibited an actual (subjective) expectation of privacy
> and, second, that the expectation be one that society is
> prepared to recognize as 'reasonable.'  Thus a man's home
> is, for most purposes, a place where he expects privacy,
> but objects, activities, or statements that he exposes to
> the 'plain view' of outsiders are not 'protected' because no
> intention to keep them to himself has been exhibited.  *On
> the other hand, conversations in the open would not be
> protected against being overheard, for the expectation of
> privacy under the circumstances would be unreasonable.*

*Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (emphasis

supplied).  The law has ever since consistently required that any expectation of

privacy be objectively reasonable before it is protected, this Court so reaffirming the

principle earlier this year.  *United States v. Cuevas-Perez,* 640 F.3d 272, 277 (7th

Cir. 2011).  *Cf.* Alv. Br. 38.[9]

A speaker's objectively unreasonable subjective expectations cannot make a

conversation private under any commonsense or jurisprudential meaning of the

word "privacy."  The public conversations of on-duty police were previously found by

---

[9] Alvarez states her novel privacy definition is "[c]onsistent with the discussion in
*Bartnicki.*"  Alv. Br. 38.  But *Bartnicki*, unlike here, involved an objectively private
telephone call.

the Illinois Supreme Court not to be private.  The Act, as applied to the ACLU's

recording of those conversations, does not advance a privacy interest.[10]

### B.    Alvarez's Asserted Speech Interest Is Incorrect.

Alvarez asserts the Act as applied to the ACLU Program advances robust,

uninhibited speech during private conversations.  Alv. Br. 4, 16-17.  A reason

government has an interest in protecting some *private* conversations is to advance

open communication.  *Bartnicki*, 532 U.S. at 532-33.  But the conversations subject

to the ACLU Program are not private, and uniformed police already may record

them.  Alvarez offers no reason, evidence, or case suggesting that when on-duty

police and civilians participate in such conversations, the addition of civilian

recording will inhibit anyone's speech when police recording will not.  The only case

Alvarez cites is inapposite.  Alv. Br. 4, 17, citing *United States v. United States*

*District Court*, 407 U.S. 297 (1972) (secret warrantless government interception of

private phone calls).

### C.    Alvarez's Asserted Law Enforcement Interests Are Unsupported.

Alvarez suggests the ACLU Program may cause police to lose "unquestioned

command" of "mercurial encounters," for example by "provoking" civilians.  Alv. Br.

---

[10] Alvarez observes that some conversations in public places are private, Alv. Br. 20, 27, 39, 40, citing *Katz*, that on-duty government employees enjoy some privacy rights, Alv. Br. 39-40, citing *City of Ontario v. Quon*, 130 S. Ct. 2619 (2010), and that civilians subject to police encounters enjoy some privacy rights.  Alv. Br. 40. But the ACLU Program implicates none of these privacy interests.  Nor does Alvarez's citation to the Eavesdropping Clause and the Privacy Clause of the Illinois Constitution make any sense.  *See* Alv. Br. 38 n.19.  Those clauses only limit state actors.  *Stern v. Great Western Bank*, 959 F. Supp. 478, 482 (N.D. Ill. 1997); *Bianco v. ABC*, 470 F. Supp. 182, 187 (N.D. Ill. 1979); *Kelly v. Franco*, 72 Ill. App. 3d 642, 644-45 (1st Dist. 1979); *People v. Smith*, 72 Ill. App. 3d 956, 964 (1st Dist. 1979).  The ACLU is not a state actor.

18

25, 41. But Alvarez provides no evidence. And under the ACLU Program, "the manner of recording is otherwise lawful," Compl. ¶ 1, so the ACLU will not commit the crime of "obstruct[ing]" police. 720 ILCS 5/31-1(a). *Cf.* Alv. Br. 25 n.10, citing *Colten v. Kentucky*, 407 U.S. 104, 109-10 (1972) (no First Amendment protection for bystanders to "interfere[]" with police by "engage[ing]" them "in conversation").

Alvarez also asserts the Act encourages civilians to speak to police "conditioned on confidentiality," and prevents disclosure of "matters of national and local security." Alv. Br. 41. But civilians may listen to, photograph, and take notes regarding on-duty police in public places (*id.* 30, 41), so police presumably do not hold confidential conversations in such places, whether or not civilians might also audio record police.

To be sure, government has an important interest in effective law enforcement. ACLU Br. 40. But the ACLU Program would *advance* this interest, by ensuring greater accountability and transparency about controversial police policies and by deterring and detecting police misconduct. *Id.* 41-44. The Illinois legislature noted this in allowing police recording. D. 18, Exh. B, pp. 83-85. No other state criminalizes audio recording the kinds of conversations subject to the ACLU Program (ACLU Br. 6-7 & n.2), showing a national consensus that Alvarez's asserted harms to law enforcement are improbable. *Cf.* Alv. Br. 4 n.3 (erroneously dismissing Illinois' outlier status as "a red-herring").

### D.    Alvarez's Asserted Alternative Channels Are Inadequate.

Alvarez asserts the Act as applied to the ACLU Program leaves adequate alternative channels, because the ACLU may use photography, silent video, note-

taking, and eyewitness accounts.  Alv. Br. 30, 41.  However, audio recording often will provide critical, unassailable information about contested events that cannot be matched by these other means.  ACLU Br. 16-17, 42-44.  Moreover, audio-video is far more effective than these supposed alternatives for communications with electronic listeners in such venues as YouTube — the ACLU's "intended audience." *Horina v. Granite City*, 538 F.3d 624, 636 (7th Cir. 2008).

## V.   Plaintiffs Have Standing.

The ACLU, and putative plaintiffs Connell and Carter, have First Amendment pre-enforcement standing.  Such standing exists if the plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution." *Babbitt v. UFW*, 442 U.S. 289, 298 (1979).  *Accord* Alv. Br. 8.  The ACLU Program is protected by the First Amendment and prohibited by the Act, and there is a credible threat of prosecution given Alvarez's decision not to disavow enforcement of the non-moribund Act.

### A.   The Act Bans The Protected ACLU Program.

The ACLU routinely monitors police in public places, including at planned and spontaneous expressive events.  But for the credible threat of prosecution by Alvarez under the Act, ACLU Executive Director Connell immediately would direct ACLU Field Manager Carter to implement the ACLU Program.  Four times in the last year, the ACLU monitored such events, and would have made such recordings,

but for the threat of prosecution.[11]  In the future, the ACLU will continue to monitor

such events, and would audio record police but for this threat.  ACLU Br. 8-10 &

n.3.  This ACLU Program is plainly proscribed by the Act's ban on audio recording

conversations, whether or not private, without all-party consent.  720 ILCS 5/14-

1(d), -2(a)(1)(A).  *Accord* Alv. Br. 3-4; D. 19 (motion to dismiss) p. 7.[12]

This case is unlike *Goldhamer v. Nagode*, 621 F.3d 581, 587 (7th Cir. 2010),

which rejected injunctive standing to challenge a law that could not "fairly be read

to prohibit" the plaintiff's activity.  However, injunctive standing would exist even

"when an ambiguous statute arguably prohibits certain protected speech."  *Id.* at

586.  Here, the Act is unambiguous and clearly prohibits the ACLU Program.  *Cf.*

Alv. Br. 3, 11.

### B.　There Is A Credible Threat Of Prosecution.

A credible threat of prosecution can rest on two factors.  First, the statute is

not "moribund."  *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *New Hampshire Right to

Life PAC v. Gardner* ("*NH-RTL-PAC*"), 99 F.3d 8, 15 (1st Cir. 1996).  *See also Bauer

v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) ("the existence of a statute implies a

threat to prosecute").  Here, the Act is not moribund.  In recent years, at least nine

prosecutors have charged at least thirteen civilians with violating the Act by audio

---

[11] The ACLU's opening brief describes three.  The fourth occurred on May 27, 2011.

[12] If Connell directs Carter to audio record police, Connell would be "legally
accountable" for such "solicit[ation]."  720 ILCS 5/5-1, -2(c).  Additionally, the ACLU
could be prosecuted.  The Act bans recording by a "person," 720 ILCS 5/14-2, which
includes a "private corporation," 720 ILCS 5/2-15, which may be prosecuted for
crimes authorized by top managers, 720 ILCS 5/5-4(a)(2).  *Accord* Alv. Br. 14.

21

recording on-duty police, including two prosecutions initiated by Alvarez.  ACLU Br. 7-8.  In June 2011, Alvarez initiated a third such prosecution: *People v. Tate*, No. 11-cr-9515 (Cook County Cir.).  While prosecutions are not necessary to establish pre-enforcement standing, *Babbitt*, 442 U.S. at 302, they show a statute is not moribund.

Second, a credible threat of prosecution exists when the prosecutor "has not disavowed any intention of invoking the criminal penalty."  *Id.*.  *See also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988); *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010); *Commodity Trend Serv., Inc. v. CFTC*, 149 F.3d 679, 687 (7th Cir. 1998); *NH-RTL-PAC*, 99 F.3d at 17; *NRA v. City of Evanston*, 2009 WL 1139130, *3 (N.D. Ill. Apr. 27, 2009); *ACLU v. Johnson*, 4 F. Supp. 2d 1024, 1027 (D.N.M. 1998).  Here, Alvarez has not "disavowed" prosecution. Instead, Alvarez states the Act bans the ACLU Program (Alv. Br. 3-4, 7, 14), and vigorously litigates her prerogative to prosecute the ACLU Program.

### C.    Alvarez's Proposed Barriers Are Contrary To Law.

Alvarez asserts that because enforcement of the Act is a matter of prosecutorial discretion, there is no sufficient threat.  Alv. Br. 10-11.  If Alvarez were correct, no First Amendment pre-enforcement challenge could ever be brought against a criminal statute since enforcement is always subject to prosecutorial discretion.  In fact, pre-enforcement standing to challenge criminal statutes is routinely allowed.  *See, e.g., Babbitt*, 442 U.S. at 298, 302 ("[W]hen fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not first expose himself to actual arrest or prosecution to

be entitled to challenge the statute."); *NH-RTL-PAC*, 99 F.3d at 14 (finding pre-enforcement standing to challenge "a statute carrying criminal penalties"); *Planned Parenthood v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987) ("[T]here is no requirement that a plaintiff necessarily subject himself to actual prosecution under a penal statute before bringing a federal action challenging that statute…."). *See also, e.g., Doe*, 410 U.S. at 188; *Am. Booksellers Ass'n*, 484 U.S. at 393; *Holder*, 130 S. Ct. at 2717; *Kucharek v. Hanaway*, 902 F.2d 513, 516 (7th Cir. 1990); *Commodity Trend Serv.*, 149 F.3d at 687; *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003); *520 S. Michigan Ave. Assocs. v. Devine*, 433 F.3d 961, 962-63 (7th Cir. 2006).

Alvarez's three cases (Alv. Br. 3, 10-11) are inapposite. Here, the Act squarely bans the ACLU Program, which is protected by the First Amendment, and the ACLU foregoes it for fear of prosecution. But in *Boyle v. Landry*, 401 U.S. 77, 81 (1971), the Court rejected a pre-enforcement challenge to all provisions of numerous statutes, "broadly and generally," that might theoretically have been used as "devices for bad-faith prosecutions" of First Amendment activity, though "nothing" indicated "any jeopardy" of such prosecutions. Moreover, in *O'Shea v. Littleton*, 414 U.S. 488, 490-92, 496-97 (1974), the Court denied injunctive standing against a state judge's bond and sentencing decisions, because the plaintiffs did not allege that "any relevant criminal statute" was "unconstitutional on its face or as applied," and the plaintiffs could avoid the challenged practice by "conduct[ing] their activities within the law." Similarly, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983), the Court denied injunctive standing against LAPD chokeholds,

23

because the plaintiff did not allege an unlawful city policy, and he could avoid injury by not provoking officers and without foregoing protected expression.

Nor do Alvarez's parade of contingencies deprive Plaintiffs of standing. She argues the ACLU has not pled the dates of the police-civilian encounters they want to record or the names of the involved parties. Alv. Br. 9, 13. But "[i]njury need not be certain" and can "entail[] some element of chance." *Brandt v. Vill. of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010). Alvarez asserts the ACLU might not locate police-civilian conversations to record. Alv. Br. 9, 12. This is also not required. Nevertheless, four times in the past year the ACLU has been deterred from recording.

Alvarez also asserts the ACLU might not locate "a confrontation involving police misconduct." *Id.* 13. *See also id.* 11, 34-35. But the ACLU Program is not limited to recording police confrontations or misconduct, as all actions of the police are matters of public concern and recording public police conversations may aid in gathering and disseminating news and in petitioning. Further, monitoring will deter misconduct. And, whether there is misconduct may be evidenced by what occurs before or after a particular action.

Alvarez asserts the ACLU Program might fall within the Act's exemption for recording by one conversation participant who reasonably suspects another participant is about to commit a crime against him. *Id.* 12, 13 & n.5, discussing 720 ILCS 5/14-3(i). But the ACLU Program extends to police conduct not reasonably suspected of being criminal. Moreover, this exemption only extends to recording "by

or at the request of" a conversation party.  720 ILCS 5/14-3(i).  Thus, it will not

apply unless the victim requests the recording, or the ACLU employee is the victim.

But victims of police assault generally will not have the opportunity to ask someone

else to record; for example, Rodney King did not ask George Holliday to make his

famous recording.  Likewise, police generally will not assault ACLU employees who

are using audio recorders.

Alvarez asserts police might consent to recording.  Alv. Br. 12, 13.  But

seeking such consent would be impracticable in most cases.

Finally, Alvarez argues she might elect not to prosecute (*id.* 3-4, 14), she has

not explicitly threatened prosecution (*id.* 10, 14), and she has no written policies

regarding the Act (*id.* 14).  But Alvarez's failure to disavow enforcement of the non-

moribund Act establishes a credible threat of prosecution.  No explicit threat is

needed.  *Doe*, 410 U.S. at 188; *Majors*, 317 F.3d at 721; *520 S. Michigan Ave.*

*Assocs.*, 433 F.3d at 962-63.  *Accord* Alv. Br. 8.  While Alvarez speculates that some

police will not sign criminal complaints (Alv. Br. 14), they are not needed to

prosecute a felony, and the ACLU identified 14 recent cases where police helped

prosecute civilians who recorded them.

## VI.   Abstention Is Not Warranted.

Alvarez asserts this Court should abstain pursuant to *Younger v. Harris*, 401

U.S. 37 (1971).  Alv. Br. 43-45.  Not so.  "*Younger* abstention is appropriate only

when there is an action in state court against the federal plaintiff and the state is

seeking to enforce the contested law in that proceeding."  *Forty One News, Inc. v.*

*Lake County*, 491 F.3d 662, 665 (7th Cir. 2007).  *Accord Doran v. Salem Inn, Inc.*,

422 U.S. 922, 930 (1975); *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995); *Hoover v. Wagner*, 47 F.3d 845, 848 (7th Cir. 1995).  Not to the contrary is *520 S. Michigan Ave. Assocs.*, which in *dicta* opined that if state prosecution "really were imminent," a federal court "might" abstain.  433 F.3d at 963.  This Court rejected that option in that case, because the prosecutor did not "promise" a "prompt" state prosecution. *Id.*

Alvarez would manufacture a "catch 22" around the word "imminent": supposedly, if prosecution is imminent, then *Younger* abstention is required; but if prosecution is not imminent, then pre-enforcement standing is impossible.  Alv. Br. 45.  Such a rule is incompatible with the foregoing cases, which clearly allow pre-enforcement standing and do not require *Younger* abstention in cases like this one.

## VII.  The ACLU Is Entitled To A Preliminary Injunction.

Alvarez asserts the ACLU seeks "affirmative relief" and not "the status quo," and thus is not entitled to a preliminary injunction.  Alv. Br. 45-46.  But courts often preliminarily enjoin statutes likely to be found unconstitutional.  *See, e.g., Planned Parenthood v. Doyle,* 162 F.3d 463 (7th Cir. 1998); *Adams v. ARDC*, 801 F.2d 968 (7th Cir. 1986); *Charles v. Carey*, 627 F.2d 772 (7th Cir. 1980).

Alvarez offers no other argument against the ACLU's entitlement to a preliminary injunction, and suggests remand of this point.  Alv. Br. 46-47.  But the ACLU is entitled to such relief, ACLU Br. 47-49, and the district court has twice denied it, *id.* at 1, 3-4, 47.

## CONCLUSION

The ACLU respectfully requests that this Court (1) hold the Act violates the First Amendment as applied to the ACLU Program; (2) reverse denial of the ACLU's motion to amend judgment and file an amended complaint; (3) reverse dismissal; (4) grant a preliminary injunction; and (5) remand for merits proceedings.

DATED:  August 26, 2011

Respectfully submitted:

/s/ Richard J. O'Brien

_____
Counsel for plaintiff

| | |
|---|---|
| HARVEY GROSSMAN | RICHARD J. O'BRIEN |
| ADAM SCHWARTZ | *Counsel of Record* |
| KAREN SHELEY | LINDA R. FRIEDLIEB |
| Roger Baldwin Foundation | ROBERT D. LEIGHTON |
| of ACLU, Inc. | MATTHEW D. TAKSIN |
| 180 N. Michigan Ave. Suite 2300 | Sidley Austin LLP |
| Chicago, IL 60601 | One South Dearborn |
| (312) 201-9740 | Chicago, IL 60603 |
| | (312) 853-7000 |

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type volume limitation of Fed. R. App. 32(a)(7)(B) because it contains 6,995 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a0(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 12-point Century Schoolbook type in both the text and footnotes.

Dated this 26th day of August, 2011.

/s/ Richard J. O'Brien

_____

Richard J. O'Brien

## CERTIFICATE OF SERVICE

I certify that on August 26, 2011 I electroncially filed the foregoing Reply Brief of Plaintiff-Appellant The American Civil Liberties Union of Illinois with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I further certify that all counsel of record in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Richard J. O'Brien

_____

Richard J. O'Brien
Attorney for Plaintiff-Appellant